IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

VIOLA ROMERO,

        Plaintiff,

v.        No. CV-14-774 CG

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff Viola Romero's *Motion to Reverse and Remand for a Hearing, with Supporting Memorandum* (the "Motion"), filed on April 3, 2015, (Doc. 15); Defendant's *Brief in Response to Plaintiff's Motion to Reverse or Remand* ("Response"), filed on July 29, 2015, (Doc. 21); and Ms. Romero's *Reply to Brief in Response to Plaintiff's Motion to Reverse or Remand* ("Reply"), filed on August 15, 2015. (Doc. 22).

On August 12, 2010, Ms. Romero filed an application for supplemental security income benefits with the Social Security Administration ("Administration"), alleging disability beginning on July 29, 2010.[1] (Administrative Record ("AR") 179–82). The application was denied initially on December 16, 2010, (AR 115–18), and again upon reconsideration on April 4, 2011. (AR 23, 123–25). Ms. Romero filed her request for a hearing on June 7, 2011, (AR 127); a hearing was held on October 23, 2012, before Administrative Law Judge ("ALJ") Kurt Schuman. (AR 40–107). Ms. Romero, Michael F. Enright, Ph.D., Sandra K. Trudeau, an impartial vocational expert, and Sam Archuleta, a

---

[1] Ms. Romero also filed an application for disability insurance benefits on August 12, 2010. (AR 23). That claim was denied because she had never had insured status. (*Id.*). Ms. Romero does not appeal that eligibility denial. (*Id.*).

friend of Ms. Romero's, testified at the hearing. (*Id.*). Ms. Romero represented herself at the hearing, and signed a waiver of representation. (AR 23, 40–107).

The ALJ issued his opinion on November 16, 2012, and determined that Ms. Romero was not disabled under section 1614(a)(3)(A) of the Social Security Act. (AR 23–39). Ms. Romero filed an application for review with the Appeals Council, which was summarily denied, (AR 1–4), making the decision of the ALJ the final decision of the Commissioner of the Social Security Administration (the "Commissioner") for purposes of this appeal.

Ms. Romero complains that the Commissioner committed reversible, legal error by failing to: (i) weigh the opinions of various medical professionals in the record; (ii) properly develop the record as to the limitations caused by her mental impairments; and (iii) properly consider the evidence of her mental impairments separate from her substance abuse issues.

The Court has reviewed the Motion, the Response, the Reply, and relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record. Because the ALJ did not properly weigh a probative medical opinion in the record, the residual functional capacity finding is unsupported by substantial evidence and legally erroneous. Therefore the Court finds that the Motion shall be **GRANTED** and the case shall be **REMANDED** for further proceedings.

I.   **Standard of Review**

The standard of review in a Social Security appeal is whether the final decision of the Commissioner of the Social Security Administration is supported by substantial evidence and the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093,

1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Hamlin*, 365 F.3d at 1214; *Langley*, 373 F.3d at 1118.

## II.     Applicable Law and Sequential Evaluation Process

For purposes of disability insurance benefits and supplemental security income, a person establishes a disability when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). In light of this definition for disability, a five-step sequential evaluation process has been established for evaluating a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the sequential evaluation process, the claimant has the burden to show that: (1) she is not engaged in "substantial gainful activity"; (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) her impairment(s) meet

or equal one of the "Listings"[1] of presumptively disabling impairments; or (4) she is unable to perform his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). At the fifth step, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, in light of her residual functional capacity ("RFC"), age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261.

### III.  Background

Ms. Romero applied for supplemental security income benefits alleging that she suffered from debilitating cirrhosis, depression, anxiety, sleep disorder, carpel tunnel of the right hand, arthritis, and kidney stones. (AR 216).

At step one, the ALJ determined that Ms. Romero had not engaged in substantial gainful activity since July 29, 2010. (AR 26). At step two, the ALJ concluded that Ms. Romero was severely impaired with schizoaffective disorder bipolar type, alcohol dependence, hepatitis c, cirrhosis, and post-traumatic stress disorder. (*Id.*).

At step three, the ALJ found that in consideration of Ms. Romero's mental impairments with her substance use disorders, she would satisfy listings 12.04 (bipolar disorder) and 12.09 (alcohol dependence). (AR 26). The ALJ made this determination based on Dr. Enright's testimony that Ms. Romero had bipolar disorder rather than schizophrenic disorder, and marked restriction of activities of daily living, moderate difficulties in maintaining social functioning, and marked difficulties in maintaining concentration, persistence, and pace, and no evidence of decompensation. (*Id.*).

---

[1] 20 C.F.R. pt. 404, subpt. P, app. 1.

However, the ALJ noted that Dr. Enright opined that without taking into account the effects of Ms. Romero's alcohol and drug use, Ms. Romero had only mild restriction of activities of daily living and in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation. (AR 27). Further, Charles Mellon, M.D., a non-examining consultative source, opined that Ms. Romero had only mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, concentration, persistence, and pace, and no episodes of decompensation. (*Id.*). He noted that Ms. Romero had asserted that her alcohol dependence was in remission as of October 20, 2010. (*Id.*).

Thus, the ALJ concluded that "if [Ms. Romero] stopped the substance abuse" then none of her impairments, solely or in combination, would equal one of the listed impairments. (*Id.*). Since, "[a]n individual shall not be considered to be disabled . . . if alcohol or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled," 42 U.S.C. § 423(d)(2)(C), the ALJ ultimately found that Ms. Romero did not satisfy any of the listings at step three because her substance abuse was a contributing factor material to the determination of disability.

The ALJ proceeded to step four, and made an RFC finding that if Ms. Romero "stopped the substance abuse," that she could perform a restricted range of light work, as that term is defined in 20 C.F.R. § 416.967(b). (AR 27–32). The ALJ explained that Ms. Romero is further limited in that she: (i) required the ability to alternate between sitting and standing at will, provided she is not off task more than ten percent of the workday; (ii) could only occasionally climb ladders, ropes, and scaffolds, and crawl, but

could frequently climb ramps and stairs, balance, stoop, kneel, and crouch; (iii) could only occasionally handle but may do frequent fingering with her right-upper extremity; (iv) must avoid concentrated exposure to extreme heat and cold and avoid concentrated use of moving or dangerous machinery and exposure to unprotected heights; (v) is limited to work that consists of simple, routine, and repetitive tasks; and (vi) must work in a low-stress job, where she is not required to cope with work-related circumstances that could be dangerous to the worker or others. (*Id.*).

The ALJ determined that Ms. Romero has no past relevant work experience, and classified her as a younger individual between the ages of 18 and 49 as of the date that the application was made, with a limited education and English-language abilities. (AR 32). Ms. Trudeau testified that an individual with Ms. Romero's age, education, work experience, and RFC could meet the physical and mental demands of occupations such as counter clerk, surveillance systems monitor, and call-out operator, "if she stopped the substance abuse." (AR 33). The ALJ concluded that Ms. Trudeau's testimony was harmonious with the information contained in the Dictionary of Occupational Titles, and adopted the testimony. (*Id.*). The ALJ found that all of the aforementioned jobs exist in significant numbers in the national economy. (*Id.*).

The ALJ concluded that Ms. Romero's "substance use disorder is a contributing factor material to the determination of disability because [she] would not be disabled if she stopped the substance abuse." (AR 33). Thus, the ALJ found that Ms. Romero was not disabled. (AR 33–34).

## IV.   Analysis

Ms. Romero contends that the ALJ committed error by formulating a RFC

determination unsupported by substantial evidence and the law. Ms. Romero alleges the ALJ failed to properly weigh and consider the medical opinions of Steven K. Baum, Ph.D., and Barry Weiss, M.D. She also complains that the ALJ failed to properly develop the record as to the functional limitations caused by her mental impairments. Last, Ms. Romero contends that the ALJ did not make the required findings necessary to show that she would not be disabled if she discontinued her substance abuse, because the mental restrictions and limitations resulting from her substance abuse are too intertwined with her other various mental disorders to separate them.

The Commissioner responds that the ALJ's RFC finding is supported by substantial evidence and is not legally erroneous, and that the ALJ provided specific, legitimate reasons supported by evidence for not adopting these certain medical opinions into the RFC. The Commissioner also argues that the ALJ did not fail in his duty to develop the record, and that substantial evidence supports the ALJ's ultimate finding that Ms. Romero would not be disabled if she stopped engaging in substance abuse.

### A. *Consultative Psychologist Dr. Baum's Medical Opinion*

Ms. Romero contends that the ALJ failed to properly consider and weigh the medical opinion of Dr. Baum. She argues that the ALJ's RFC finding assessed far fewer restrictions on her mental RFC than what Dr. Baum assessed, and therefore that it was error to reject Dr. Baum's opinion without explanation. The Commissioner concedes that the ALJ rejected Dr. Baum's opinion without explanation, but urges the Court to use common sense and find that the ALJ committed no legal error requiring remand.

Dr. Baum, a State Agency consulting psychologist, examined and evaluated Ms. Romero on October 20, 2010. (AR 288–90). After examining Ms. Romero, Dr. Baum

diagnosed her with schizoaffective disorder, bipolar type, and rated her Global Assessment of Functioning ("GAF") score as 32. (*Id.*). He observed that Ms. Romero reported having depression and anxiety, and had attempted suicide approximately eight years prior. (*Id.*). Dr. Baum discussed Ms. Romero's prior drug use, noting that she had used opiates and heroin for 13 years, and spent approximately 20 years in prison due to drugs. (AR 288). Dr. Baum also observed Ms. Romero's history of alcohol abuse, commenting that her driver's license had been revoked because of a DWI four years prior, that she has cirrhosis, and that a report dated August 23, 2010 from Torrance County Detention listed one of her health problems as alcohol withdrawal. (AR 288, 289). However, Dr. Baum stated that her alcohol and substance abuse issues were in remission at the time of examination. (AR 290).

Dr. Baum opined that Ms. Romero had marked limitations in her ability to understand and remember detailed and complex instructions, and in her ability to attend and concentrate. (AR 290). He found that Ms. Romero had moderate limitations in the following functional areas: (i) ability to understand very short and simple instructions; (ii) ability to carry out instructions; (iii) ability to work without supervision; (iv) ability to interact with the public, coworkers, and supervisors; (v) ability to adapt to change in the workplace; and (vi) ability to use public transportation or travel to unfamiliar places. (AR 290).

  B. <u>*The Regulations on Weighing Medical Opinions*</u>

The Regulations require the ALJ to evaluate every medical opinion in the record. *See* 20 C.F.R. § 416.927(d). A medical opinion is a statement from a physician, psychologist, or other acceptable medical source that reflects judgments about the

nature and severity of the claimant's impairment(s), including their symptoms, diagnosis and prognosis, what the claimant can still do despite the impairment(s), and physical or mental restrictions. 20 C.F.R. § 416.927(a)(2). The level of deference a non-treating physician's opinion receives must be determined using the following six factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Goatcher v. U.S. Dept. Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995) (citing 20 C.F.R. § 404.927(c)(2)–(6)). The ALJ must give good reasons—reasons that are "sufficiently specific to [be] clear to any subsequent reviewers"—for the weight that he ultimately assigns to the opinion. *See Langley*, 373 F.3d at 1119 (citations omitted).

### C. The ALJ Did Not Weigh Dr. Baum's Opinion

In reviewing Dr. Baum's consultative psychological evaluation, the ALJ recited Dr. Baum's specific notes of Ms. Romero's mental health history and current symptoms, in addition to the functional limitations Dr. Baum placed on Ms. Romero. (AR 30). The ALJ also observed that Ms. Romero had not reported to Dr. Baum information about her alcohol withdrawal symptoms, adjustment disorder, and that she heard voices. (*Id.*). The parties agree that the ALJ did not explain what weight, if any, he gave to Dr. Baum's opinion as to Ms. Romero's mental functioning abilities.

Ms. Romero points out that the ALJ seemingly rejected Dr. Baum's mental RFC assessment because the ALJ did not place as many mental functioning limitations on her as Dr. Baum. As discussed above, the ALJ limited Ms. Romero to low-stress work that

9

consists of simple, routine, and repetitive tasks, where she is not required to cope with work-related circumstances that could be dangerous to her or others. Dr. Baum opined that Ms. Romero also had marked limitations in her ability to understand and remember detailed and complex instructions, and in her ability to attend and concentrate, and assessed moderate limitations in her ability to understand very short and simple instructions; carry out instructions; work without supervision; interact with the public, coworkers, and supervisors; adapt to change in the workplace; and to use public transportation or travel to unfamiliar places.

Any impairment-related limitations created by an individual's response to demands of work must be reflected in the RFC assessment. *Jaramillo v. Colvin*, No. 13-2194, 576 Fed. Appx. 870, 875 (10th Cir. Aug. 27, 2014) (unpublished) (citing Social Security Rulings ("SSR") 85-15, 1985 WL 56857, at *6 (1985)). In formulating the RFC, the ALJ is required to express non-exertional capacity, which includes mental limitations, in terms of "work-related functions" or "work-related mental activities." *Jaramillo*, 576 Fed. Appx. at 874 (citations omitted). The deviation from Dr. Baum's opinion is significant, because at a minimum, a substantial loss of ability to understand, carry out, and remember simple instructions, respond appropriately to supervision, co-workers, or usual work situations, or deal with changes in a routine work setting, would justify a finding of disability. *See* SSR 85-15, 1985 WL 56857, at *4 ("a substantial loss of ability to meet [either] of these basic work-related activities would . . . justify a finding of disability"). The Rulings further advise that "the mentally impaired may have difficulty meeting the requirements of even so-called 'low-stress' jobs." SSR 85-15, 1985 WL 56857, at *6.

The Tenth Circuit has held that an ALJ's failure to formulate an RFC that considers even moderate limitations identified in a consulting physician's RFC assessment to be reversible error. *Frantz v. Astrue*, 509 F.3d 1299, 1302–03 (10th Cir. 2007). "A moderate impairment is not the same as no impairment at all." *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007). A medical opinion that a claimant has a moderate limitation in an area of functioning "supports the conclusion that the individual's capacity to perform the activity is impaired." *Jaramillo*, 576 Fed. Appx. at 875 (quoting *Program Operations Manual System* ("POMS") DI 24510.063 B.2, Soc. Sec. Admin. (Oct. 14, 2010)). Thus, Dr. Baum's mental RFC assessment was significantly probative as to Ms. Romero's mental RFC.

The Court also agrees with Ms. Romero that the ALJ's analysis of Dr. Baum's opinion was legally deficient. As explained above, the ALJ was required to consider the deference factors and give sufficiently specific reasons for the weight that he granted Dr. Baum's opinion. The ALJ was also required to discuss any uncontroverted evidence that he did not rely upon, as well as the significantly probative evidence that he rejected, in addition to the evidence supporting his decision. *See Frantz*, 509 F.3d at 1303; *see also Haga*, 482 F.3d at 1208.

The Commissioner acknowledges that the ALJ failed to explicitly weigh Dr. Baum's opinion. The Commissioner argues that the ALJ did not consider Dr. Baum's opinions because they were not "an accurate reflection of [Ms. Romero's] functioning if the effects of alcohol dependence were separated out." (Doc. 21 at 11). The Commissioner points out that the ALJ observed that Ms. Romero did not disclose her history of alcohol dependence to Dr. Baum, (AR 30), which was a material issue, and

that Ms. Romero reported that she was drinking heavily a few months before her appointment with Dr. Baum. (AR 459), and relapsed in the subsequent years. (AR 65–66, 599). The Commissioner adds that while Ms. Romero reported hallucinations and delusions to Dr. Baum, Ms. Romero denied any such symptoms in 2012. (AR 30). Thus, the Commissioner urges the Court to find that any error was harmless because there is a path that may be reasonably discerned as to the reasons why the Commissioner ultimately rejected Dr. Baum's opinion.

However, the ALJ did not state that those were the factors that she relied upon in rejecting Dr. Baum's opinion. The Commissioner's arguments cannot save the ALJ's determination because the Court may not stray from the four corners of the decision. Further, Dr. Baum's evaluation notes reflect that he was aware of Ms. Romero's past alcohol and drug abuse, and that her substance abuse was in remission at the time of the examination. The Court must evaluate an ALJ's decision based solely on the reasons stated in the decision, and it is impermissible for the Court to engage in post hoc rationalization, as the Commissioner urges this Court to do. *Robinson v. Barnhart*, 366 F.3d 1078, 1084–85 (10th Cir. 2004). Therefore, the Court finds that the ALJ legally erred by failing to provide sufficiently specific reasons why Dr. Baum's opinion was not afforded any weight.

As explained above, Dr. Baum's opinions were significantly probative, and the ALJ was required to explain why he implicitly rejected Dr. Baum's opinions by not incorporating them into his RFC finding. Because the ALJ failed to give any reasons for rejecting Dr. Baum's opinion, the Court must remand this case because the ALJ's analysis of Dr. Baum's opinion does not allow meaningful review of the RFC

determination. On remand, the ALJ should also be mindful to weigh all of the relevant and probative medical opinions in the record.[2]

### V.     Conclusion

For the reasons discussed above, the Court finds that, considering all of the evidence in the record, the ALJ did not apply the correct legal standards in considering Dr. Baum's opinion. The Court does not decide any other issue raised by Ms. Romero on appeal, as these matters are mooted by the proceedings conducted or the disposition reached on remand.

**IT IS THEREFORE ORDERED** that Ms. Romero's *Motion to Reverse and Remand for a Hearing, with Supporting Memorandum*, (Doc. 15), be **GRANTED** and that this case be **REMANDED** to the Commissioner for further proceedings consistent with this Memorandum Opinion and Order.

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE

---

[2] Ms. Romero also points out that the ALJ failed to properly weigh other medical opinions in the record. Indeed, the Court has reviewed the ALJ's decision and he did not explicitly weigh any of the medical opinions, and should be careful to comply with the Regulations on remand.